UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 06-3574(DSD/JJG)

Matthew G. Bolin, Jeffrey R.
Peterson and Duane Heman,

            Plaintiffs,

v.                                          **ORDER**

Japs-Olson Company, Michael
Murphy, individually, Doug
Lowe, individually and
Robert F. Murphy, individually,

            Defendants.


        Daniel J. Brazil, Esq., 2124 Dupont Avenue South,
        Minneapolis, MN 55405 and James W. Delaplain, Esq., 2140
        Fourth Avenue North, Anoka, MN 55303, counsel for
        plaintiffs.

        Bradley J. Lindeman, Esq., John J. McDonald, Jr., Esq.,
        Debra L. Weiss, Esq. and Meagher & Geer, 33 South Sixth
        Street, Suite 4400, Minneapolis, MN 55402, counsel for
        defendants.


     This matter is before the court upon defendant's motion for

summary judgment.  Based upon a review of the file and record and

for the following reasons, the court grants defendant's motion in

part.


                            **BACKGROUND**

     This discrimination and fair labor standards action arises out

of defendant Japs-Olson Company's ("Japs-Olson") termination of

plaintiffs Matthew G. Bolin ("Bolin"), Jeffrey R. Peterson

("Peterson") and Duane Heman ("Heman"). Japs-Olson is a commercial printing and direct-mail print production company located in St. Louis Park, Minnesota. The company's pressroom houses the printing presses and operates on a twenty-four hour basis split into three eight-hour shifts. Two pressmen are assigned to each press per shift. The first pressman is responsible for the overall press performance, set up, press operations and troubleshooting. The second pressman assists the first pressman and spells him or her during breaks.[1] Every thirty days, each press operator rotates from one shift to the next. Japs-Olson's president Michael Murphy ("Murphy") supervises the pressroom and holds the authority to evaluate, hire and fire workers. He employs a pressroom superintendent who oversees the pressroom and supervises the first shift. Shift supervisors monitor subsequent shifts and report to the pressroom superintendent.

Plaintiffs were all first pressmen at Japs-Olson. Heman, born in 1953, began work at Japs-Olson in 1983, left the company twice, and returned in 1996. Peterson, born in 1961, began work at Japs-Olson in 1985, and Bolin, born in 1957, started working at Japs-Olson in 1983. Of the three, Bolin alone faced significant health problems, including heart failure, hypertension and type II diabetes. After returning from hospitalization for congestive

---

[1] Press operators are paid for the full eight-hour shift, with no time allotted specifically for eating or breaks.

heart failure in March 1999, Bolin experienced side effects related to his medication and requested accommodation from Japs-Olson. Although the company refused to permanently remove Bolin from a rotating shift, it agreed to temporarily do so while he adjusted to his medication and assigned him to work in the mail room operating a fork lift.  By November 1999, Bolin's cardiologist recommended that Bolin could return to his previous work position, and Japs-Olson reassigned him to the pressroom.   During his 1999 hospitalization, Bolin learned that he also suffered from diabetes and hypertension.  He did not, however, request accommodation for these maladies and effectively managed them through medication and diet.[2]

By 2000, each plaintiff had been assigned to the M-100-2 press, a heat set web press with multiple delivery options.  Japs-Olson had three M-100 presses, but only the M-100-2 was fitted with the delivery options that allowed it to print the greatest variety of printing stock thicknesses and qualities.  The M-100-2 was also

---

[2] Bolin also learned in the 1990s that he suffered from a hernia.  After living with the condition for years, Bolin underwent hernia surgery in June 2004.  Upon his return to work he requested and received a six-week ten-pound lifting restriction.  (See Weiss Decl. Ex. CC.)

equipped with color control and performance recording systems. These additional features occasionally caused delays on the M-100-2 press and increased the makeready time[3] for the machine.

In fall 2002, Murphy grew concerned about the delays associated with the M-100-2 and met with plaintiffs to discuss their work. Murphy told plaintiffs that their performance was deficient, but plaintiffs maintained that the performance numbers were inaccurate. The delays continued, and on April 14, 2003, Japs-Olson issued a written reprimand to plaintiffs. The reprimand - identical for each - noted that the M-100-2 performance was "at an all time low," with lower press speeds compared to the other presses and the M-100-2's 1997 speed and an increased makeready time since the color system was installed. (Weiss Decl. Exs. T, U, V.) The reprimand noted that plaintiffs must make improvements by June or else face "staffing changes." (Id.) Bolin, Peterson and Heman each reviewed and signed the April 14 reprimand.

On November 3, 2003, Murphy again met with plaintiffs and issued them a written reprimand that detailed concerns about "maintenance deficiencies" and a sticker with disparaging remarks toward management affixed to the M-100-2's maintenance book. (Id. Exs. X, Y, Z.) The reprimand listed expectations for plaintiffs, including following proper maintenance and setup procedures and

---

[3] The "makeready time" is the period in which the pressmen prepare the machine for its next job.

treating management with respect.  Heman again signed the reprimand but Bolin and Peterson refused.  Three days later, Peterson asked to be demoted to a second pressman, but Japs-Olson did not accede, and the three plaintiffs continued working as first pressmen on the M-100-2.

By late summer 2004, Murphy had not seen the desired improvement in plaintiffs' performance.  He considered issuing another written reprimand that threatened demotion, but after discussing the matter with his father - the company's chairman of the board - Murphy decided to terminate Bolin, Heman and Peterson. Japs-Olson fired plaintiffs on August 18, 2004.  The company then promoted three existing employees - ages 31, 38, and 41 - to the first pressman position on the M-100-2.

Plaintiffs filed this action in Minnesota state court on August 10, 2006, alleging that Japs-Olson discriminated against them based on age and disability and violated the federal and state Fair Labor Standards Act ("FLSA").  Defendant properly removed the matter to federal court on September 5, 2006, and now moves for summary judgment on all claims.

## DISCUSSION

### I.  Standard of Review

The moving party in a motion for summary judgment will prevail if it demonstrates to the court that "there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.  Moreover, if a nonmoving party cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

## II. Fair Labor Standards Act

Plaintiffs argue that Japs-Olson violated the Minnesota and federal FLSA by requiring eight-hour work shifts without allowing time for meal or rest breaks.  Under the FLSA, bona fide meal periods are not worktime; in order to be bona fide, the "employee must be completely relieved from duty."  29 C.F.R. § 785.19.  The employee is not "relieved" if required to perform any duties while

eating and must be compensated for his or her meal period. See id.; Henson v. Pulaski County Sheriff Dept., 6 F.3d 531, 533-34 (8th Cir. 1993). Pursuant to the Minnesota FLSA, an employer must "permit each employee who is working for eight or more consecutive hours sufficient time to eat a meal," although the employer need not pay the employee during the meal break. Minn. Stat. § 177.254. Further, the Minnesota Administrative Code - mirroring the federal FLSA - provides that a bona fide meal break occurs only when an employee is completely relieved from duty. See Minn. R. 5200.0120.

Taken together, neither the federal nor state FLSA requires Japs-Olson to give plaintiffs a bona fide meal break. Both draw a distinction between meal breaks and bona fide meal breaks to clarify when an employer must compensate employees while they eat. Further, the Minnesota FLSA requires that employers "permit" employees to eat while on an eight-hour or more shift. It does not, however, mandate a bona fide meal break for such employees. Instead, the state and federal laws ensure that employers expecting workers to perform job-related activities while eating - even if only minimal supervision - must compensate the workers for that time. Japs-Olson allowed plaintiffs to eat while working and paid them accordingly. Therefore, the company complied with the federal and state FLSA, and the court grants defendant's motion for summary judgment as to these claims.

### III.  Disability Discrimination

Plaintiffs argue that they were terminated in violation of the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA").[4]  Specifically, they allege that Japs-Olson fired Bolin because of his congestive heart condition, diabetes and hernia[5] and fired Heman and Peterson because of their association with Bolin.

The ADA prohibits discrimination by an employer "against a qualified individual with a disability because of the disability of such individual."  42 U.S.C. § 12112(a).  A court analyzes an ADA discrimination claim pursuant to the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Under McDonnell Douglas, the employee bears the initial burden of proving a prima facie case of discrimination.  411 U.S. at 802.  The employer then has the burden to articulate a

---

[4] Claims under the MHRA are analyzed similarly to ADA claims. See Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1205-06 (8th Cir. 1997).  Both are analyzed under the McDonnell Douglas burden-shifting framework, and federal precedent may be used to construe the MHRA.  See Dovenmuehler v. St. Cloud Hosp., 509 F.3d 435, 439 n.4 (8th Cir. 2007).  Accordingly, the court addresses the claims together.  See id.; Larson v. Koch Ref. Co., 920 F. Supp. 1000, 1004 (D. Minn. 1996).

[5] Bolin also included his hepatitis C as a disability for the purposes of his ADA and MHRA claims.  However, Bolin did not disclose this condition to Japs-Olson nor request an accommodation. (Weiss Decl. Ex. A, Bolin Dep. at 74.)  Accordingly, his hepatitis C cannot serve as the basis for a disability claim.  See Lue v. Moore, 43 F.3d 1203, 1206 (8th Cir. 1994); Braziel v. Loram Maint. of Way, Inc., 943 F. Supp. 1083, 1099 (D. Minn. 1996).

legitimate, nondiscriminatory reason for the adverse employment action. <u>Id.</u> at 802-03. Finally, to prevail, a plaintiff must show that the defendant's proffered reason was a pretext for discrimination. <u>Id.</u> at 804.

### A. Bolin's Prima Facie Case

To prove a prima facie case of employment discrimination a plaintiff must demonstrate that (1) he has a disability within the meaning of the ADA or MHRA; (2) he is qualified to perform the essential functions of his job, with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. <u>See Dovenmuehler</u>, 509 F.3d at 439. The plaintiff also bears the burden to prove that he is disabled. <u>Burchett v. Target Corp.</u>, 340 F.3d 510, 516 (8th Cir. 2003).

A plaintiff may demonstrate a disability within the meaning of the ADA or MHRA by showing that he (1) has a physical, sensory or mental impairment which materially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. Minn. Stat. § 363A.03, subdiv. 12; <u>see also</u> 52 U.S.C. § 12012(2)(A). Major life activities include caring for one's self, performing manual tasks, walking, seeing, hearing, breathing, learning and working. <u>See Fjellestad v. Pizza Hut of Am., Inc.</u>, 188 F.3d 944, 948 (8th Cir. 1999). An individual is materially limited in the life activity of working if he is "significantly restricted in the ability to perform either a class

9

of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Kellogg v. Union Pac. R.R. Co., 233 F.3d 1083, 1087 (8th Cir. 2000) (citations and quotations omitted). The inability to perform a single, particular job does not constitute a material limitation. Id.

Here, Bolin has not established that he is disabled within the meaning of the ADA or MHRA. Although Bolin's heart disease and diabetes are ongoing conditions, his cardiologist cleared him for a return to normal first pressman duties eight months after his hospitalization for heart failure, and Bolin effectively manages his diabetes and hypertension through diet and medication. (See Weiss Decl. Ex. Q; Weiss Decl. Ex. A, Bolin Dep. at 60-62.) Moreover, Japs-Olson accommodated Bolin for these conditions, just as it did following his hernia surgery in 2004.[6] Such accommodation enabled Bolin to resume his position on the M-100-2. Indeed, he was operating without any restriction at the time of his termination. For these reasons, Bolin has failed to demonstrate that he is disabled under either the ADA or the MHRA and has not satisfied his burden under McDonnell Douglas. Accordingly, the

---

[6] To the extent that Bolin objects to defendant's refusal to remove him from a rotating shift altogether in 1999, his claim is time-barred. See 42 U.S.C. § 12117 (ADA disability discrimination statute of limitations is 300 days); Minn. Stat. § 363A.28 (employee must bring action on MHRA claim within one year of discriminatory practice).

court grants summary judgment as to Bolin's disability discrimination claims.

## B.   Associational Discrimination

Heman and Peterson argue that Japs-Olson impermissibly terminated them because of their association with Bolin. The ADA prohibits an employer from "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). To present a prima facie case of associational discrimination, plaintiffs must show that (1) they were qualified for the job at the time of the adverse employment action; (2) they were subjected to adverse employment action; (3) they were known by the employer at the time to have a relative or associate with a disability; and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. See Land v. Washington County, No. 99-1255, 2001 WL 228441, at *3 (D. Minn. Mar. 5, 2001) (citing Den Hartog v. Wasatch, 129 F.3d 1076, 1085 (10th Cir. 1997)).

The court has determined that Bolin did not suffer from a disability as defined by the ADA or the MHRA. Accordingly, Heman and Peterson cannot demonstrate a prima facie case of associational discrimination. Further, even if the court had found Bolin

11

disabled, Heman and Peterson have not demonstrated the requisite relationship or association with Bolin required for their claim. Accordingly, summary judgment is warranted as to Heman and Peterson's associational discrimination claims.

## IV.  Age Discrimination

Plaintiffs argue that they were terminated because of their age in violation of the Age Discrimination in Employment Act ("ADEA") and the MHRA.  The ADEA provides that it is "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  MHRA age discrimination claims are analyzed under the same standard. Ramlet v. E.F. Johnson Co., 507 F.3d 1149, 1152 (8th Cir. 2007). An age discrimination plaintiff may survive the defendant's motion for summary judgment "either by setting out direct evidence of discrimination or by creating an inference of discrimination under the [McDonnell Douglas] burden shifting framework."  Id. (citing McGinnis v. Union Pac. R.R., 496 F.3d 868, 873 (8th Cir. 2007)).

### A.  Direct Evidence

Direct evidence is "evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment

action." <u>Griffith v. City of Des Moines</u>, 387 F.3d 733, 736 (8th Cir. 2004) (quoting <u>Thomas v. First Nat'l Bank of Wynne</u>, 111 F.3d 64, 66 (8th Cir. 1997)).   In this context, whether evidence is direct "depends on its causal strength." <u>Ramlet</u>, 507 F.3d at 1152-53.   That is, direct evidence does not include "stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself." <u>Browning v. President Riverboat Casino-Mo., Inc.</u>, 139 F.3d 631, 635 (8th Cir. 1998) (internal quotations and citation omitted).

Here, Bolin alleges that Murphy's June 2004 comment to him - "Matt, I don't think you can do the job anymore" - is direct evidence of age discrimination.   (Bolin Decl. at 14.)   The statement, however, makes no reference to Bolin's age.   Thus, the statement is not direct evidence of discrimination because an inference is required to reflect any attitude of discrimination based on age. <u>See Erickson v. Farmland Indus., Inc.</u>, 271 F.3d 718, 725 (8th Cir. 2001).   Further, because Murphy made the statement two months before firing Bolin, the link between the comment and the decisional process is attenuated. <u>See Twymon v. Wells Fargo & Co.</u>, 462 F.3d 925, 934 (8th Cir. 2006).   For these reasons, Bolin has not offered direct evidence of age discrimination by Japs-Olson.

### B.   Inference of Discrimination

In the absence of direct evidence, a court analyzes age discrimination claims under the McDonnell Douglas burden shifting framework detailed above. See Haas v. Kelly Servs., Inc., 409 F.3d 1030, 1035 (8th Cir. 2005).

### 1.   Plaintiffs' Prima Facie Case

To satisfy the prima facie burden in an age discrimination termination case, plaintiffs must show that they were (1) at least 40 years old; (2) qualified for their position; (3) terminated; and (4) replaced by someone sufficiently younger to permit an inference of age discrimination. See McGinnis, 496 F.3d at 875. Although there is no universal standard by which to judge whether a replacement is "significantly younger," courts have found that an age difference of five years or fewer is insufficient to establish a prima facie case. See Ramlet, 507 F.3d at 1154; Lewis v. St. Cloud State Univ., 467 F.3d 1133, 1136 (8th Cir. 2006); Schiltz v. Burlington N. R.R., 115 F.3d 1407, 1413 (8th Cir. 1997).

In this case, it is undisputed that plaintiffs were over 40 at the time of termination, possessed the proper qualifications for their first pressman position and were terminated. Japs-Olson replaced plaintiffs with workers who were 31, 38 and 41 years old. At the time of termination, Heman was 51, Bolin was 47 and Peterson was 42. Although two of the replacements were less than five years younger than Peterson, the court finds that the replacements were

14

significantly younger than the majority of plaintiffs. Accordingly, plaintiffs have satisfied their initial burden.

## 2.   Defendant's Reasons for Termination

Once a plaintiff has established a prima facie case, an employer may rebut the case by articulating one or more legitimate, nondiscriminatory reasons for its decision. See Pope v. ESA Servs., Inc., 406 F.3d 1001, 1007 (8th Cir. 2005). The burden is "not onerous, nor does the explanation need to be demonstrated by a preponderance of the evidence." Arraleh v. County of Ramsey, 461 F.3d 967, 975 (8th Cir. 2006) (citing Floyd v. Mo. Dept. of Soc. Servs., 188 F.3d 932, 936 (8th Cir. 1999). Indeed, a "proffered legitimate, non-discriminatory reason ... need not, in the end, be correct if the employer honestly believed the asserted grounds at the time of [the adverse employment action]." Twymon, 462 F.3d at 935.

Here, defendant argues that it terminated plaintiffs because of their poor attitude and performance over several years. The 2003 written reprimands and meetings between Murphy and plaintiffs support defendant's proffered reasons. Therefore, defendant has met its burden, and the onus is on plaintiffs to show that defendant's reasons were pretextual.

## 3.   Pretext

Once the burden has shifted back to the plaintiff, a defendant is entitled to summary judgment unless the plaintiff submits

15

evidence sufficient to establish both that defendant's proffered explanation is pretextual and that age-based animus was the real reason for defendant's adverse action. <u>See</u> <u>St. Mary's Honor Ctr.</u> <u>v. Hicks</u>, 509 U.S. 502, 515 (1993). This requires more than just discrediting the employer's stated reason for termination. <u>See</u> <u>Kohrt v. MidAmerian Energy Co.</u>, 364 F.3d 894, 898 (8th Cir. 2004). Rather, a plaintiff must also "prove that the proffered reason was a pretext for age discrimination." <u>Id.</u> To that end, if the proffered reason for termination "is shown by conflicting evidence to be untrue, then the nonmoving party is entitled to all favorable inferences that the false reason given masks the real reason of intentional discrimination." <u>Bassett v. City of Minneapolis</u>, 211 F.3d 1097, 1107 (8th Cir. 2000) (citation omitted). Often, the employer's proffered reason is that a plaintiff was not performing the job satisfactorily. If the employee has produced evidence that he or she was performing satisfactorily and the employer has produced evidence that he or she was not, this evidence conflicts and may create a fact issue. <u>Erickson v. Farmland Indus., Inc.</u>, 271 F.3d 718, 726 (8th Cir. 2001).

Plaintiffs offer a series of reasons that defendant's explanation for termination was pretextual. Specifically, plaintiffs argue that they were adequately performing their jobs, that defendant used selective production data to support its case against them, that termination was too harsh a penalty for the

16

alleged inadequate performance, that the timing of the three firings on one day was suspect and that they were replaced by substantially younger employees.

The court will not second-guess the discretionary business judgment decisions of employers. See Stuart v. Gen. Motors Corp., 217 F.3d 621, 637 (8th Cir. 2001). Therefore, plaintiffs objections about the harshness and timing of defendant's decision are not evidence of pretext. Plaintiffs have, however, raised issues of fact as to the level of their performance and defendant's methods of evaluating their performance. For example, defendant compared plaintiffs' 2003 production percentages with their press's production numbers from 1997, but the M-100-2 had been outfitted with additional features since 1997 that admittedly slowed production time. (Weiss Decl. Ex. G, Korzeniowski Dep. at 10.) Further, defendant's comparisons of production numbers to other presses are similarly unreliable because the M-100-2's setup was unique within Japs-Olson's pressroom. For these reasons, factual issues remain as to whether defendant's proffered reasons were pretextual, and summary judgment is not warranted on plaintiffs' age discrimination claims.

## CONCLUSION

Therefore, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. No. 12] is granted as to plaintiffs' federal

and state fair labor standards and disability discrimination claims

and denied as to plaintiffs' age discrimination claims.

Dated:  April 9, 2008

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court